peared and performed, provided the said illness or other event had not happened.

"(5) It is further agreed that the party of the first part shall have an option upon the services of the party of the second part for a period of ten weeks at the expiration of this contract, by giving the party of the second part a notice of ten weeks prior to the expiration of this contract.

"(6) The party of the first part is to deduct five per cent. commission from the salary of the party of the second part, and pay the same to William Morris, for services rendered to the party of the second part.

"Notes: · It is understood that during this engagement the cost of any railroad fare from one town to another shall not exceed the sum of five dollars for each person. It is also understood that if the party of the second part plays west of Chicago during this engagement, the fares from Chicago and back to Chicago are to be paid by the party of the first part.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"In the presence of:                                    Geo. W. Day.
            ·                                        "Klaw & Erlanger."

It will be observed from this agreement that it lacks any element of mutuality. In it the plaintiff obligated himself to do several things, but the defendants did not obligate themselves to do anything. As the agreement imposed no obligation upon the defendants, it is impossible that the defendants should have been guilty of a breach of their obligations when they assumed no obligations. That the agreement is not a fair and just contract may be entirely true, but, not having been cancelled or reformed, it is the duty of a court of law to interpret it as it is. We have no right by interpretation to make a contract different from the contract which the parties made for themselves. Under the agreement upon which this action is brought the defendants had an option to require the plaintiff to do certain things. The defendants did not obligate themselves to do anything.

The railroad fares, amounting to $80.83, which the plaintiff laid out on behalf of the defendants, are charges for which the defendants are liable. As to this item, the defendants admitted their liability upon the trial.

The judgment should be reversed, with costs to the appellants to abide the event, unless the respondent stipulates to reduce the judgment to $80.83, in which event the judgment should be affirmed, with costs to the appellants.

---

(60 Misc. Rep. 187.)

### MUTUAL LIFE INS. CO. v. GRANNISS.

(Supreme Court, Special Term, New York County. July, 1908.)

CORPORATIONS (§ 319*) — ACTION AGAINST OFFICER — MISAPPROPRIATION OF FUNDS.

   In an action by a corporation against its vice president, the complaint alleged that defendant paid out corporate funds to one whom he knew was not entitled to receive them, and was not a creditor of the corporation nor an agent for any creditor. *Held* to sufficiently state a cause of action, though it did not allege that the payment was made wrongfully, carelessly, negligently, or without authority.

   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 319.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Mutual Life Insurance Company against Robert A. Granniss. Demurrer to complaint overruled.

See, also, 118 App. Div. 830, 103 N. Y. Supp. 835; 57 Misc. Rep. 174, 107 N. Y. Supp. 926.

James McKeen, for plaintiff.
White & Case, for defendant.

ERLANGER, J. The defendant was at one time a trustee and vice president of the plaintiff. It is alleged in the complaint that during his incumbency of the office he neglected his official duty, and wasted the plaintiff's assets. Five causes of action are set up in the complaint. The fourth is attacked by demurrer as being insufficient in law, and the particular objection assigned is that it fails to charge the defendant with having made the payment therein referred to "wrongfully, improvidently, carelessly, negligently, or without authority." The demurrant contends that, even if the defendant did pay the money, non constat such payment might well have been a loan to the person receiving it in the ordinary course of business duly authorized by the directors who had full charge of the company's funds.

The words quoted, it seems to me, carry with them no magic. It is not necessary in charging a person with fraud that that term be used. If facts sufficient are alleged from which the inference of fraud appears, enough has been stated to sustain the pleading. And so, because there is an absence from the fourth cause of action of either or all of the words quoted, the pleading quoad the particular cause is not to be condemned, if otherwise there are sufficient averments from which the inference can clearly be drawn that the payment was unlawfully made. It is the rule, and not the exception, for pleaders to allege by way of conclusion that particular acts were either unlawful or negligently performed. Such averments, however, add no strength to the pleading. The Code requires a plain and concise statement of the facts and nothing more, and I think this requirement has been met. It is alleged in the cause of action to which objection is made after certain formal averments:

"That the defendant affixed his signature to a certain voucher admitting the receipt by one Olyphant of $25,000, and that by so doing he, the defendant, intended to cause and procure, and did cause and procure, the said sum to be paid to said Olyphant from the moneys of plaintiff; that the defendant then well knew that said Olyphant was not authorized by plaintiff to receive or disburse the said sum or any other moneys of the plaintiff on its behalf, nor was the said plaintiff indebted to the said Olyphant, nor was the latter at the time acting as agent or otherwise for any person or corporation to whom this plaintiff was indebted, nor authorized as such agent or otherwise to receive or disburse said money [and that by reason and in consequence of the aforesaid conduct of the defendant the said sum was wholly lost to plaintiff]."

I do not see why more should have been pleaded. The clear intendment from these admitted facts is that the defendant, in violation of his duty as an officer, paid this large sum of money without any liability on the part of the plaintiff, either to the one receiving it or to any one else. True, the added words, "that the money was lost to plaintiff," create no cause of action. But isolated sentences are not to be taken

to condemn a pleading. The whole must be taken together, and, unless a legal liability can be spelled therefrom, the pleading is unquestionably bad. I see nothing in the allegation to justify the inference "that the payment to Olyphant might have been made in his individual capacity, as a loan under a unilateral transaction," as is contended by counsel for the demurrant. Counsel has presented in his brief quite a plausible argument in respect of the new matter added since the pleading was amended, but his reasons are hardly sufficient to destroy the effect of the pleading, unless we go back to the time when slight technical omissions were held to be fatal. The rule of a liberal construction, in so far as it applies to matters of form, should be carried to its fullest extent, subject, of course, to the further rule that no essential facts are to be supplied by inference alone. Coatsworth v. Lehigh Valley R. R. Co., 156 N. Y. 451–457, 51 N. E. 301; Sage v. Culver, 147 N. Y. 245, 41 N. E. 513. I am of the opinion that under the averments plaintiff can prove the unlawfulness of the payment to Olyphant, made through the defendant, who, at the time, as is admitted, knew that Olyphant was not entitled to the money.

The demurrer is overruled, with leave to withdraw the same within 20 days after entry of interlocutory judgment upon payment of costs.